[No. 4984.]

## GEORGE HAGAR v. THE BOARD OF SUPERVISORS OF YOLO COUNTY.

ASSESSMENT ON SWAMP LAND.—If an assessment is levied on the swamp land of a district for the purpose of reclaiming it according to the plan presented by the trustees, and the work is performed and the assessment is insufficient to pay for the same, a new assessment may be made, under the Act of March 30, 1874, to pay the deficiency due on the work already done.

BY-LAWS OF A SWAMP LAND DISTRICT.—An Act of the Legislature, if in conflict with a by-law of a swamp land district, supersedes the same.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

The act of 1868, under which District 108 was formed, provides (section 32), that petitioners for the formation of a " Reclamation District," after the approval of their petition, have power " to ordain and establish such ' By-Laws'

as they shall deem necessary to effect the work of reclamation and keep the same in repair."

The statute then provides that the "By-Laws" shall be signed by the petitioners and recorded in the same book, immediately following the petition for the formation of the district.

The By-Laws of the district provided that "the trustees shall allow no indebtedness to accrue in excess of the amount of the assessment levied."

The other facts are stated in the opinion.

*Wm. Blanding and W. H. L. Barnes,* for the Appellant.

*George Cadwalader,* for the Respondent.

By the Court, CROCKETT, J.:

On the fourth day of October, 1875, the Board of Supervisors entered an order appointing commissioners to levy an additional assessment on the lands in Swamp Land District No. 108. On *certiorari,* the District Court set aside this order as null and void, on the ground that the Board of Supervisors had exceeded its jurisdiction in making it, and the appeal is from the judgment of the District Court.

This Swamp Land District was organized in September, 1870, under the act of March 28, 1868 (statutes 1867–8, p. 507); and at the time of its organization, the trustees presented to the Board of Supervisors a plan for the reclamation of the district and an estimate of the cost. Thereafter, an assessment was levied on the lands to be benefited, sufficient to raise the estimated amount, and the work of reclamation proceeded. In October, 1875, the trustees presented to the Board of Supervisors a petition, stating the work which had been done, and that "all work and improvements contemplated by said original plan has been fully performed. The original assessment was and is insufficient to provide for the complete reclamation of the lands of the district according to the original plan thereof, and a further assessment is necessary and required to provide for the payment thereof, not including the expenses

of the future protection, maintenance and repair thereof."
The petition then proceeds to state the total cost of all the
work done, from which it deducts the amount of the prior
assessment, and prays that a new assessment for the defici-
ency be made by Commissioners to be appointed by the
board.

The respondent contends that the petition does not state
a case in which an additional assessment can be levied
under the statute, and consequently that the board had no
jurisdiction to appoint the commissioners. The argument
on this point is: First. That under the statute a second as-
sessment can be levied only when it is necessary to *complete*
the work of reclamation; and it is said the petition fails to
show, either that the land has been or can be reclaimed.
Second. That the assessment is intended, not for a further
prosecution of the work of reclamation, but to pay debts
illegally contracted for work already done.

Section 33 of the act of 1868 required the trustees to re-
port to the Board of Supervisors "the plans of the work
and estimates of the cost, together with the estimates of in-
cidental expenses of superintendence, repairs, etc.; and
said Board of Supervisors   *   *   *   *shall* appoint three
commissioners" to view the land and make the assessment.
Section 34 provided that, "in case the tax levied shall be
insufficient to pay for the reclamation or for the necessary
repairs, the said supervisors *shall*, upon revised estimates
furnished by said trustees, make additional levies sufficient
for the purpose."

Thus the law stood up to the time of the adoption of the
Political Code, by sections 3455 and 3456 of which, section
33 of the act of 1868 was substantially re-enacted. Section
3459 was substituted for section 34 of the act of 1868, and
provided that "if the original assessment is insufficient to
provide for the complete reclamation of the lands of the
district, or if further assessments are from time to time re-
quired to provide for the protection, maintenance and repair
of the reclamation works, the trustees must present to the
Board of Supervisors by which the district was formed, a
statement of the work to be done and its estimated cost;

and the board *must* make an order directing the commissioners," or other commissioners to be appointed, to make another assessment to cover the estimated cost.

By the act of March 30, 1874, this section was amended by inserting the words "done or" before the words "to be done;" so that as it now reads, the trustees are to present a statement "of the work *done* or to be done and its estimated cost, and the board *must* make an order directing the commissioners * * * to assess the amount of such estimated cost as a charge upon the lands within the district." The petition under review appears to be in strict compliance with this provision. It states the work done, and that all the work contemplated by the original plan has been performed, and the cost of it, and that the former assessment was insufficient to provide for the complete reclamation of the land "according to the original plan thereof," and that a further assessment is necessary. It does not, it is true, state that the lands in the district have been completely reclaimed by the work already done, and to pay for which an assessment is required, but only that the works contemplated by the original plan had been fully performed. Without the amendment of 1874 there would be great force in the argument that after the first assessment was exhausted there could be no additional assessment, except to *complete* the work of reclamation, or to protect and keep in repair the works already erected. But that amendment, it it has any meaning, or is to have any effect whatever, must have been intended to meet precisely such a case as this. Before the amendment the trustees were to present to the board, as the basis for another assessment, "a statement of the work *to be done,* and its estimated cost." But since the amendment the statement to be made is "of the work *done* or *to be done,* and its estimated cost." To hold that a new assessment could be made only for work thereafter to be performed, would be to ignore entirely the amendment of 1874, and to leave the law precisely as it stood before. It is not our province to make the law, but to expound it; and while we can readily perceive that gross abuses may grow up and enormous wrongs be perpetrated

under our present system for the reclamation of swamp and overflowed lands, it is for the Legislature to furnish the remedy.

It was urged at the bar that the by-laws of the district prohibited the trustees from contracting debts in excess of the previous assessment, and that for this reason the second assessment is illegal and void. But however this may have been prior to the amendment of section 3459 of the Political Code, the effect of the amendment, as we have seen, was to authorize an assessment to pay for work already done; and if the two were in conflict, the amendment superseded the by-law in so far as the latter could operate, if at all, on the validity of the assessment.

Judgment reversed and cause remanded with an order to the District Court to dismiss the writ.

Neither Mr. Chief Justice WALLACE nor Mr. Justice MC-KINSTRY expressed an opinion.