Uurket, J.
While the petition in error asks relief upon several grounds we shall consider only one of them,, that which invokes section 19 of article 1 of the constitution of this state. That section is as follows:
*472 “Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use,' a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.”
Section 6 of article 13 of the constitution is as follows:
“The general assembly shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power.”
In Zanesville v. Richards, 5 Ohio St., 589, this court held that section 2 of article 12 of the constitution is a limitation upon the power of taxation which the general assembly can grant to a municipality under this section, and that general revenue is required to be raised by a uniform levy on all taxable property alike without exemption. Later decisions have held that general revenue may also be raised by fees in certain cases.
In Hill v. Higdon, 5 Ohio St., 243, and also in Cleveland v. Wick, 18 Ohio St., 303, this court held that section 19 of the Bill of Rights, and said section 6 of article 13, are independent of each other, and that said section 19 is not a limitation on said section *473 6. Upon the correctness of that holding depends the determination of this case.
In Hill v. Higdon, supra, it is held that the constitution must be so construed as to be consistent throughout, and it was concluded that that could only be done by holding these two sections independent of each other, and the same theory obtained in Cleveland v. Wide, supra.
If they are independent of each other then the one does not affect, limit or control the other. If they áre independent, the guaranty in section 19 that private property shall ever be held inviolate, may be in effect abrogated and nullified under the guise of an assessment. If they are independent, then after private property has been taken for public use and paid for, section 19 has exhausted itself, and section 6 may ■ then step in with its powers of assessment and begin, not where section 19 left off, but back of that point, and may again take up the question of benefits conferred by the taking of the property for public use, and compel the owner from whom the property was taken, to pay back into the treasury all that he has received, and the costs and expenses in addition thereto. If they are independent, the power of assessment, unlike the power of taxation, is unlimited and unrestricted, except by the will of the General Assembly, and the general assembly need not look for benefits upon which to found an assessment, but may assess as it pleases whether there are benefits or not; it may supply its treasury with funds with which to make improvements by assessment upon any property it pleases, and exempt any property it pleases. A mere statement of the consequences of holding the two sections to be independent is sufficient to show that they are not so, and that section 19 is a limitation on said section 6.
*474 But we are not without authority upon this question. That the constitutional guaranty of the inviolability of private property is a limitation upon the power of taxation and assessment has been held by the Supreme Court of the United States and by this court. The Supreme Court of the United States so held in construing the fourteenth amendment to the constitution in Davidson v. New Orleans, 96 U. S., at page 107, and in the Kentucky Railroad Tax Case, 115 U. S., 321. And this court in Chamberlain v. Cleveland, 34 Ohio St., 551, held that section 19 of the Bill of Rights is a limitation upon the power of assessment, and held that, “If a sum is exacted in any instance in excess of the value of the special benefits conferred, it is, as to such excess in that instance private property unjustly taken for public use without compensation to the owner.” In considering the question as to whether the power of assessment is unlimited and in the sole discretion of the general assembly, the court say: “If such a discretionary power is vested in the general assembly, it is very clear that it may be used to subvert section 19 of the Bill of Rights, and private property will not be inviolate, but at the mercy of a discretion, under which it may be taken from the owner without compensation, and be gratuitously given to the public.” It is, therefore, clear that said section 19 is a limitation upon the power of assessment in section 6 of article 13 of the constitution.
Being such limitation all that is found in said section Í9 bearing upon the power of assessment must also be construed as a limitation upon that power; that is the power of assessment in said section 6 must be so used and administered as not to conflict with said section 19, but must be subservient and subordinate thereto.
*475 The limitation is not only as to the amount of the assessment, which cannot exceed benefits, but it is also as to the purpose for which an assessment can be made. No assessment can be made to raise general revenue, because that must be raised by taxation under other provisions of the constitution, as has often been held by this court. And as assessments cannot be made to raise general revenue, no assessment can be made to replenish the general revenue in the treasury, or reimburse the treasury for general revenue which has been paid out. When payments have been made out of the general revenue fund, the. treasury can only be replenished or reimbursed by taxation, or fees, and not by assessments.
The two sections deal with the same general subject-matter, that of taking value from a private individual and appropriating it to public use, whether that value consists of real estate for a road bed, or money to pay for improving a road bed, and both should be construed together as being in pari materia, and by so doing the constitution is consistent throughout without any independent conflicting sections.
Said section 19 provides that “Private property shall ever be held inviolate, but subservient to the public welfare. When taken * * * for the purpose of making or repairing roads, which shall be open to the public without charge, a compensation shall be made to the owner in money * i:‘ * and such compensation shall be assessed by a jury without deduction for benefits to any property of the owner.”
The property is held subservient to the public welfare, and may be taken for the purpose of making or repairing roads which shall be open to the public, so that it is only, the public that is granted the power to *476 take private property, and the public can only take such property for public nse. As the public takes the property for public nse, it follows that the public must pay for the property which it takes and uses. If the state takes the property, the state must pay for it. If a county takes the property, the county must pay for it. If a township or school district takes the property, payment must be made by the taker, and if a city takes the property, the city must pay for it. In all such cases the state, or the subdivision of the state which takes the property, is in that particular case the public.
In practice the compensation is awarded by a jury, and the court confirms the verdict and renders the proper judgment, and thereupon payment is made out of its treasury by that subdivision of the state which instituted the proceedings.
That subdivision which institutes the proceedings and is in that particular case the public, is thus constituted a taxing district by said section 19 to pay for the property which it takes, and payment is made by that taxing district out of its treasury, and the property cannot be awarded to it until it pays for it, or deposits the money to secure its payment.
The money to pay for property so appropriated must be raised by a levy upon the general tax list, or by the sale of bonds issued upon the public faith and credit, and whichever method may be adopted, it invokes the power of taxation, which must be an equal levy upon the general tax list, and not the power of assessment, which is a levy upon a prescribed district according to benefits. It is therefore clear that payment for property so appropriated must be by taxation, and not by assessment, and that section 19 of article 1 is in this regard a limitation upon the power of assessment in section 6 of article 13.
*477 Coming now to the power of assessment particularly in question in this case. A municipality having by proceedings in appropriation taken private property for street purposes, and paid for it out .of its treasury, can it create and constitute the lands of the owner left after the appropriation a special taxing district for the purpose of reimbursing its treasury by assessing back upon his said remaining lands the full amount of the compensation paid him, together with all the costs and expenses? We think not.
Section 19 of article 1 being a limitation on the power of assessment in section 6 of article 13 as held in the later cases, there is nothing to base such an assessment upon. The taking of private property for public use is an injury to the owner, for which under said section 19 he must be awarded full payment, and when such a payment is made, he has received only that which the constitution guaranteed him, and he can be under no obligation to the municipality for receiving that to which he had a legal and constitutional right. He parted with as much value as he received. The public injured him and paid for the injury, and then to make the injury and payment a basis for recovering back from him all he received and more, would be to take his property for nothing, and mulct him in costs and expenses besides, and this would be in direct conflict with said section 19 of article 1 of the constitution.
But it is said that after the owner has received payment of his compensation for the lands taken from him, that he stands on an equality with the rest of the community, and may be assessed the same as they for any special benefit which accrues to him by the improvement, that is, by the taking of his lands for street purposes. This is true as to the surface *478 improvement made after the street is opened, but as to the compensation paid him for the land it is not true, and is a taking back from him without consideration that which is guaranteed to him by the constitution, and which has been paid to him upon a judgment rendered in his favor by a court of competent jurisdiction. In such a case there can be no going back of the judgment rendered in the appropriation proceedings to seek for benefits conferred by the taking of the property. If he is to be assessed for such benefits, that should have been taken into consideration in the appropriation proceedings, so that the judgment might be final as to the rights and liabilities of the parties as to the lands taken. But it is answered that that could not be done because the compensation must be without deduction for benefits. True, and it is because the constitution so guarantees, that no benefits can enter into the case, and form the basis for making an assessment against him. To make an injury to his lands,for which the constitution guarantees full payment without benefits, the basis for an assessment against his lands for benefits conferred, is illogical and absurd. If such a thing can be sustained by a course of reasoning in equity — and it cannot — it certainly cannot be sustained under ofir constitution, and it is the constitution and not equity, by which we are bound when the two come in conflict.
There is much force in what is said by the Circuit Court on this question in Rhoades v. City of Toledo, 6 C. C. R., 9; 3 Circ. Dec., 325.
The case of Cleveland v. Wick, 18 Ohio St., 303, is relied upon to sustain the assessing back upon the property of the owner the compensation paid him for lands appropriated, with the costs and expenses added.
*479 That case is reasoned ont by means of two false premises which vitiate the whole case and render it' unsound. The case is based, in the first place, upon the premise that section 19 of the Bill of Rights, and section 6 of article 13, are entirely independent of each other. That this premise is false and does not exist has since been clearly shown in. the well-considered case of Chamberlain v. Cleveland, 34 Ohio St., 551. The case is based, in the second place, upon the false premise that there can be no power of assessment for surface improvements of a street, unless the power of assessment to pay for the land taken also exists, that is that the power of assessment to pay for the land taken and the/ power of assessment to pay for the cost and expenses of the surface improvement are one and the same, and inseparably connected. That this is not legally true is shown by the subsequent case of Krumberg v. Cincinnati, 29 Ohio St., 69, in which this court held 'in the fourth syllabus as well as in the opinion, that “The power to levy special assessments to pay for land taken to widen or extend a street, is separate and independent of the power to levy such assessments to pay for grading and paving the street, and the validity of assessments, made for those purposes, does .not depend upon whether the powers were exercised at the same, or different times.”
Said section 19 being a limitation upon the power of assessment as to the taxing district by which compensation and costs must be paid as above shown, it follows that such compensation and costs cannot be involved in, or as part of, the street improvement, and with that out, and the assessment made for the surface improvement against the lots and lands of all the bounding and abutting owners, including the one from whom the lands were taken to open the *480 street, according to benefits, the inequalities pointed out in that case cannot arise. It is only by insisting upon the false premise that the compensation paid and the cost and expenses of making the surface improvement are inseparably connected, and that an assessment for all or none must be made against the owner from whom lands were taken to open the street, that the inequalities pointed out in that case can arise. With the compensation left out of the assessment, there can be no double payment to the owner, as argued at the close of the opinion; and in like manner if the compensation is left out of the assessment, and the assessment made for the cost and expense of the surface improvement only, the example given in that case of A. and B. owning one acre each on the street loses its force. In fact, with that left out, the whole opinion loses its force. The whole case is founded upon and reasoned out, — and well reasoned — upon the false premises that the two sections of the constitution, above cited, are independent of each other, and that the compensation must be included as a part of the amount for which the assessment must be made, and that if no assessment can be made for the compensation, none can be made for the surface improvement.
That case is therefore not sound, and is overruled, and the statute, in so far as it undertakes to assess the compensation paid to the owner of the land taken, back upon his remaining lands together with the costs of the taking, is unconstitutional and void, and so is any ordinance passed thereunder.
In the case at bar there was paid to the railway company out of the general revenue fund raised by taxation the sum of one dollar for the right of way for a street across the track of the railway company, and there was assessed back upon the track of the *481 railway company as property abutting on such right of way of said street, over five hundred dollars, not to pay for the right of way, because that had already, been paid for out of the treasury, nor to pay for the' bridge across the railway tracks, because that was paid out of a fund raised under a special act for that purpose, but to reimburse the general revenue fund of the treasury for the one dollar paid to the company, and the costs and expenses paid out of the general revenue fund in the appropriation proceedings. The statute is broad enough to cover such a case; but is the statute warranted by the constitution? When such robbery is perpetrated under, and is attempted to be justified by, the constitution, it is high time to carefully examine that instrument, and former decisions of this court construing it, to see whether such extortions are warranted, and if former decisions seem to cover such cases, to see whether there is not some mistake in the construction, false premise in argument, or fallacy in reasoning, that leads to such unjust and burdensome results. We think that the construction heretofore placed upon the power of assessment is unwarranted, that the reasoning in former cases on that subject as above shown is founded upon false premises and is not sound, that the power of assessment does not extend to raising general revenue, nor to reimbursing the treasury for general revenue paid out in appropriating rights of way for street purposes, that the judgment of the circuit court is erroneous, and that the plaintiff in error is entitled to final judgment in its favor upon the record in this case.
The case of Northern Indiana R. R. Co. v. Connelly, 10 Ohio St., 159, was a case of making an assessment by the foot front on abutting property for the cost of a surface improvement of a street, and *482 nothing was included in the assessment for the value of lands appropriated for a street. That case is therefore not affected hy this one, but in so far as it holds that lots and lands which are not benefited by the improvement of a street, may be assessed to pay for the same, it is in conflict with Chamberlain v. Cleveland, supra, and with Norwood v. Baker, 172 U. S., 269.
The case of Schroder v. Overman, 61 Ohio St., 1, also involved a surface improvement of a street, and not an assessment for the value of lands taken for the right of way to open a new street, and that case is not affected by the case at bar.
The case of Krumberg v. Cincinnati, 29 Ohio St., 69, relied upon Cleveland v. Wick, supra, to sustain the assessment of the compensation paid for the land taken, back upon the remaining lands, but did not consider the constitutionality of the statute then in force, but assumed it to be sustained by the Wick case. In that case it was conceded that the assessment for the value of the land taken was to reimburse the city treasury for money paid for the lands, but the question as to whether assessments could be made for that purpose was not argued by counsel or considered by the court.
The case of Caldwell v. Carthage, 49 Ohio St., 334, construed the statutes then in force, but did not pass upon the question of their constitutionality. The same is true of the case of Cincinnati v. Batsche, 52 Ohio St., 324.
It has been urged that the Wick case has been sustained by the Supreme Court of the United States in Norwood v. Baker, supra. That is a mistake. That court said: “It is said that the judgment below is not in accord with the decision of the Supreme Court of Ohio in Cleve *483 land v. Wick, 18 Ohio St., 303, 310. But that is a mistake. That case only decided that the owner whose property was taken for a public improvement could not have his abutting property exempt from its due proportion of an assessment made to cover the expense incurred in making such improvement, that his liability in that regard was not affected by the fact that he was entitled to receive compensation for his property actually taken for the improvement without deduction on account of benefits to his other property. That the decision covered no other point is shown by the following extract from the opinion of the court.” Then follows an extract from the opinion. In the aboye the Supreme Court of the United' States gave only its construction of the Wick case, but further along on page 296, the court say: “We have considered the question presented for our determination with reference only to the provisions of the national constitution. But we are also of opinion that, under any view of that question different from the one taken in this opinion, the requirement of the constitution of Ohio that compensation be made for private property taken for public use, and such compensation must be assessed ‘without deduction for benefits to any property of the owner,’ would be of little practical value if, upon the opening of a public street through private property, the abutting property of the owner, whose land was taken for the street, can, under legislative authority, be assessed not only for such amount as will be equal to the benefits received, but for such additional amount as will meet the excess of expense over benefits.”
We have considered the case at bar only in view of the constitution of this state, so as to more clearly define the rights of the owners of private property when taken for public use for making streets, and the lim *484 itation upon the power of assessment in such cases, but it would seem that the judgment of the circuit court is also erroneous under the case of Norwood v. Baker, supra, because the assessment is far in excess of the benefits; but under that case a new assessment might be made to equal the benefits, if any, while under the constitution of Ohio no assessment whatever can be made back upon the property of the railway company for the compensation paid, and costs and expenses incurred in the appropriation proceedings.
Sometimes a municipality desires to open a new street, or straighten or widen an old one, in the line of general improvements, and for the general benefit and appearance of the municipality, and not for the special benefit of the lots and lands in a particular district. In such cases the compensation, costs, and expenses for lands taken should be paid by the municipality out of its general revenue fund raised for such purposes.
Sometimes the people in the vicinity desire to have a new street opened, or an old one straightened or widened, as a special benefit to their lots and lands, and when the same would not be of sufficient benefit to the municipality to warrant the payment of the compensation, costs, and expenses out of the treasury. In such cases the municipality may refuse to act in the matter until the parties to be specially benefited supply the funds to pay the compensation, costs, and expenses or such portion thereof as the municipality regards fáir and just, the same as is now authorized by section 4651 as to public roads. By acting upon this principle the burden can be placed where it belongs without forcing people to contribute by assessments where they are not benefited, and where they are opposed to the opening, *485 straightening, or widening of the street; and more than all else, their constitutional rights will be protected. If the present statutes are not broad enough they can be amended.

Judgment reversed and judgment for plaintiff m error.