Dear Mr. Cremaldi:
You have requested the opinion of this Office regarding matters related to the City of Patterson's ("the City") desire to upgrade Catherine Street. Specifically, you have asked the following questions:
 1. Does a provision in the right-of-way deed that allowed the City to extend Catherine Street across private property during construction activities in the 1960s exempt the current landowners of said private property from an assessment to fund the currently-planned upgrades?
 2. Under what conditions may a municipality waive or relinquish its authority to specially assess or tax property to defray the costs of public improvements?
It is important to understand the factual background related to your request in order to fully appreciate the answers provided below.
In your request, you note that, in the 1960s, the City entered into a right-of-way agreement with a landowner that would allow for the extension of Catherine Street from the then-developed area of the City to Highway 90. The right-of-way deed effectuating this activity contains a clause that limits the use of the property "for the construction and maintenance of the said Catherine Street Project to be established, built and maintained by THE TOWN OF PATTERSON, at its own cost, andexpenses . . ."[1] The cost of the currently-planned project to upgrade Catherine Street is expected to exceed two million dollars. Thus, the City would like to adopt a special assessment for street improvements to pay the costs of the project.
An argument could be made that the language of the original right-of-way deed exempts the descendants-in-title of the grantor from being subject to such an assessment, as the City agreed to maintain the road at its own cost and that such an assessment would constitute a defraying of the costs to the landowners rather than the City. Another view of the agreement could lead to the conclusion that this boilerplate language was intended only to refer to the upkeep of the road as to such things as potholes as it traverses the private property and was never intended to block the City from using special assessments on all of the citizens of the City, the landowners of the private property included, for major upgrades of the street systems.
The latter interpretation is supported by the Louisiana Supreme Court decision in City of Lafayette v. Male Orphan Asylum, 4 La. Ann. 1 (La. 1849). In that case, the court made a distinction between general and specific taxes, stating that an exemption from one does not equate to an exemption from the other. In the instant matter, the property owners were granted a specific exemption from the costs of day-to-day upkeep of the portion of Catherine Street that traverses their property. Under the ruling in City of Lafayette, It does not follow that they should similarly be exempt from assessments for major overhauls to the entirety of the road, of which they too will be beneficiaries.
According to McQuillin, "[i]n the absence of express authorization, a municipal corporation has no power to exempt lands from special taxation or local assessment. But the legislature has such power . . ." 14 McQuillin Mun. Corp. § 38.80 (3d ed.). There is no evidence that the Legislature has granted the City of Patterson the authority to exempt citizens from assessments, thus rendering any such implications in the right-of-way agreement unenforceable. The City can thus contract away its ability to require the underlying landowner to fix potholes and other day-to-day problems with the road, but it cannot exempt the landowners from a general local assessment that just happens to cover upgrades to the overlying road. This conclusion, too, is consistent withCity of Lafayette, supra.
Additionally, it is an accepted tenet of the law that "the burdens of taxation be equally borne by all." 14 McQuillin Mun. Corp. § 38.80 (3d ed.). See also, City of Lafayette, supra. With this tenet in mind, it is only logical that all of the property owners in the City of Patterson must bear the costs of the upgrades to the entirety of Catherine Street, as they are all beneficiaries of the use of this road. Such an interpretation necessarily includes the property owners whose land is burdened by the right-of-way discussed above.
Based upon the foregoing, it is our opinion that the City does not have the authority to grant an exemption from assessments for upgrades such as the one contemplated here without express authorization from the Legislature. Because the City could not have had such power when it entered into the right-of-way agreement with the landowners in the 1960s, it logically follows that the only permissible interpretation of that right-of-way agreement would be to alleviate the burden on the landowners for day-to-day maintenance of the road, but not to exempt them from assessments for anything more (which it would not have the power to do).
We should also add that, in our opinion, in addition to the fact that the City had no power to grant a blanket exemption from assessments, that the language in the right-of-way agreement itself does not even rise to the level of purporting to exempt the landowners from such assessments. We find support for this position in the case of City ofShreveport v. Virginia-Carolina Chemical Co., 133 So. 543 (2 Cir. 1931). In this case, a right-of-way deed was deemed to exempt landowners from paying the costs of certain improvements to a road. However, the language of that deed specifically stated that the dedication was for street purposes and that no "cost, charge, or expense, direct or indirectly whether by assessment or otherwise" would be levied against the grantor. Id. The language in the instant matter is substantially different. It does not discuss indirect assessments at all, which is precisely what the contemplated assessments would represent. It is clear to this Office that, had the landowners of the Catherine Street tract wanted to contract out of indirect costs, they could easily have done so by using language such as that in theShreveport case, subject to the landowners or the City securing legislative authority for such an exemption.
As to your second question, under what conditions may a municipality waive or relinquish its authority to specially assess or tax property to defray the costs of public improvements, we offer the following opinion. McQuillin notes that "[t]he right to exercise [the power of levying special assessments or taxes] may not be bargained away." 14 McQuillin Mun. Corp. § 38.06 (3d ed.). He additionally states that such assessments may be made, once the power to do so is initially granted by the Legislature "whenever the public good requires." Id. Such powers have been granted by the Legislature and may be found, along with the procedures for exercising them, at La. R.S. 33:771 et seq. Thus, it is our opinion that, in the absence of an express grant of power from the Legislature to a municipality to waive or relinquish its authority to specially assess as provided for in La. R.S. 33:771 et seq., that no such authority exists on behalf of the municipality.
In summary, it is the opinion of this Office that the right-of-way agreement at issue in your request did not contemplate an exclusion of the property owners from assessments for overhauls to Catherine Street. Rather, it only contemplated an exemption from a duty to fix potholes and other such day-to-day problems. Additionally, if a court were to find that the right-of-way agreement did indeed contemplate such a broad exclusion, which we do not believe it would, we are of the further opinion that such a broad exemption from taxes and assessments is impermissible under the law and that that portion of the right-of-way agreement would thus be rendered invalid and unenforceable. Finally, it is our opinion that a municipality, once granted the power to specially assess, cannot waive or relinquish that authority unless directed to do so by the Legislature. We are not aware of any such direction by the Legislature that would affect your request.
We hope this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By:_____________________ RYAN M. SEIDEMANN Assistant Attorney General
 CCF, Jr./RMS/tp
[1] Right-of-Way Deed, No. 120,514. Recorded in Book 13-A of Conveyances, page 424, Parish of St. Mary, Louisiana (emphasis added).